IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**SHERYL SMITH,**

    Plaintiff,

v.

**NATIONSTAR MORTGAGE LLC,**
dba Mr. Cooper; **FEDERAL
NATIONAL ASSOCIATION,**

    Defendant.

No. 6:22-cv-00178-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on Defendant's Motion for Summary Judgment, ECF No. 13, and on Plaintiff's Request for Judicial Notice, ECF No. 16. The Court concludes that this matter is appropriate for resolution without oral argument. Plaintiff's Request for Judicial Notice is GRANTED. Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## JUDICIAL NOTICE

Plaintiff requests that the Court take judicial notice of a copy of "30-Year Fixed-Rate Mortgages Since 1971," a document produced by the Federal Home Loan Mortgage Corporation and available on that entity's public website. ECF No. 16. The document shows historical mortgage rates on a year-to-year and month-to-month basis. Defendants have not filed any opposition to Plaintiff's request.

Judicial notice under Federal Rule of Evidence 201 permits a court to take judicial notice of an adjudicative fact if it is not subject to reasonable dispute, meaning that it is generally known or can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court concludes that the proffered exhibit is a proper subject for judicial notice and Plaintiff's request is GRANTED.

## BACKGROUND

Plaintiff Sheryl Smith financed the purchase of a home in Salem, Oregon and, in 2019, Plaintiff refinanced her mortgage. Smith Decl. ¶¶ 2-3. ECF No. 15. The loan is secured by a deed of trust. *Id.* at ¶ 5. The promissory note for the mortgage was held by Defendant Federal National Mortgage Association ("Fannie Mae"). *Id.* at ¶ 4. The interest rate on Plaintiff's refinanced mortgage is 3.99%. *Id.* at ¶ 12. Plaintiff's refinanced mortgage was serviced by Dovenmuehle Mortgage Inc. ("DMI") beginning in 2019. *Id.* at ¶ 3.

When the COVID-19 pandemic began, Plaintiff took advantage of a forbearance program offered by DMI and on April 24, 2020, Plaintiff entered into a Forbearance Agreement suspending her mortgage payments from May 1, 2020 through July 31, 2020. Smith Decl. ¶¶ 7-8; Ex. 1.

In a letter dated July 28, 2020, DMI adjusted the date of Plaintiff's next scheduled payment and confirmed that Plaintiff owed four past-due principal and interest payments totaling $4,472.78, which would be deferred. Smith Decl. ¶ 9; Ex. 2.

Plaintiff resumed making payments in September 2020. Smith Decl. ¶ 10. At the time, Plaintiff's statements showed a "Deferred Balance" of $4,472.78. *Id.*; Ex. 3.

In December 2020 and January 2021, Plaintiff made additional mortgage payments to clear off the Deferred Balance. Smith Decl. ¶ 11; Hyne Aff. ¶ 11. ECF No. 13-1.

In January 2021, available interest rates reached 3% or lower and Plaintiff began to investigate refinancing her mortgage in order to take advantage of the reduced rates. Smith Decl. ¶ 12. Plaintiff submitted initial inquiries to multiple lenders, including Mutual of Omaha Mortgage ("MOM"). *Id.* at ¶ 13. The lenders replied with loan estimates that provided interest rates and monthly payments that were lower than Plaintiff's current rate and payment, which is $1,618.04. *Id.* at ¶ 14. Plaintiff applied for a mortgage with MOM which had an estimated interest rate at 2.99% and an estimated monthly payment of $968.00. *Id.* ¶ 15.

On February 12, 2021, Plaintiff received notice that Defendant Nationstar Mortgage, LLC dba Mr. Cooper ("Nationstar") would be taking over the servicing of Plaintiff's loan from DMI beginning on March 1, 2021. Smith Decl. ¶ 16; *see also* Hyne Aff. Ex. 5 (welcome letter from Nationstar dated March 11, 2021).

Plaintiff requested a loan payoff statement from Nationstar so that she could provide it to MOM to finalize the refinancing of her loan. Smith Decl. ¶ 17. On April 14, 2021, Nationstar provided a statement indicating that Plaintiff still owed $4,472.78 as a "Non-Interest-Bearing Principal Balance." *Id.*; Ex. 7. Plaintiff affirms that she forwent taking the offer of better loan terms from MOM because doing so would have resulted in paying the $4,472.78 a second time. Smith Decl. ¶ 18.

On May 2, 2021, Plaintiff contacted Nationstar to clarify that she had already paid the deferred forbearance balance. Smith Decl. ¶ 19; Ex. 8. On July 26, 2021, Nationstar responded that the balance of $4,472.78 was still owed and that the "specified lender paid expense balance, in the amount of $4,472.78 is the deferred principal balance transferred from the prior servicer," with no acknowledgment of the payments Plaintiff had made in December 2020 and January 2021. Smith Decl. ¶ 20. Nationstar's response did, however, include a service history for loan when it was with DMI and that service history showed the additional payments made by Plaintiff. *Id.* ¶ 21.

Plaintiff continued to receive monthly statements and payoff statements from Nationstar showing the deferred forbearance balance of $4,472,78. Smith Decl. ¶ 22; Ex. 9.

Plaintiff retained counsel in September 2021 and made a qualified written request ("QWR") to Nationstar. Smith Decl. ¶ 23. The QWR sent by Plaintiff's counsel invoked the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 and sought:

> 1. A statement of the loan history from the date of the of the loan including, but not limited to, all receipts by way of payment or otherwise and all charges to the loan in whatever form.
>
> 2. A statement of any advances or charges against this loan for any purpose that are not reflected in response to request #1.
>
> 3. A statement regarding escrow account of the loan, if any, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, purchase mortgage insurance, or any other type of insurance product.

>    4. A statement that contains information relating to the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.
>
>    5. A statement that contains any information relating to any suspense account entries and/or any corporate advance entries related in any way to this loan.
>
>    6. A statement of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.
>
>    7. A copy of all property inspection reports and appraisals, broker price opinions of value, bills and invoices, and checks or wire transfers in payment thereof.
>
>    8. A statement of all late charges added to this loan.
>
>    9. A statement of all fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan.
>
>    10. A statement of the amount, payment date, purpose and recipient of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been charged against or assessed to this loan and whether or not such charge or fee is recoverable or non-recoverable.
>
>    11. A statement of the current holder of the original mortgage note.
>
>    12. The names of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this mortgage loan.

Hyne Aff. Ex. 8.

Although the QWR letter is dated September 7, 2021, it was mailed on November 2, 2021. Hyne Aff. Ex. 8. Nationstar affirms that it received the QWR on November 5, 2021. Hyne Aff. ¶ 18.

On November 8, 2021, Plaintiff received a response from Nationstar acknowledging the QWR and stating that a response would be sent no later than December 20, 2021. Smith Decl. ¶ 26. On December 16, 2021, Nationstar sent Plaintiff a second letter telling her that they would send a response to the QWR by January 6, 2022. *Id.* at ¶ 27.

On January 11, 2022, Nationstar sent a response to Plaintiff's QWR. Smith Decl. ¶ 28; Hyne Aff Ex. 11. The response letter explained that the corporate advance of $4,472.78 was not removed when the servicing of the loan was transferred to Nationstar in March 2021, but Nationstar acknowledged that the loan had been brought current while the loan was still being serviced by DMI and notified Plaintiff that her account had been adjusted and the erroneous corporate advance balance removed. Hyne Aff. Ex. 11. The response letter advised Plaintiff that "[s]ome of the information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary, confidential[,] overbroad, and unduly burdensome," and so "this information is considered outside the scope of information that must be provided." *Id.* The response did include (1) a "complete" transaction history for the period Nationstar serviced the loan; (2) Plaintiff's most recent billing statement; (3) the notice of servicing transfer and welcome letter, demonstrating Nationstar's right to service the loan; and (4) the most recent escrow analysis statement. *Id.* The letter also informed Plaintiff that Fannie Mae was the current holder of the loan and provided contact information for Fannie Mae. *Id.*

Page 7 – OPINION & ORDER

Plaintiff commenced this action on February 2, 2022. ECF No. 1. On February 26, 2022, Nationstar provided Plaintiff with some account statements and loan history which showed that Plaintiff had made payments totaling $4,472.78, but the payments were not applied to principal, interest, or escrow by Nationstar or DMI. Smith Decl. ¶ 31.

The loan history showed that on March 8, 2021, Nationstar made a negative "lender paid expense adjustment" which added a balance of $4,472.78 to Plaintiff's loan, effectively negating the unapplied payments and leaving Plaintiff owning the same sum again. Smith Decl. ¶ 32. On January 11, 2022, Nationstar made a positive "lender paid expense adjustment" in the amount of $4,472.78. *Id.* at ¶ 33.

After January 2022, Plaintiff contacted MOM to see what loan terms might be available for a refinance of Plaintiff's loan. Smith Decl. ¶ 35. Plaintiff was told that the best interest rate available to her in January 2022 was 4.25%, which was higher than Plaintiff's current interest rate. *Id.*; Ex. 11. Plaintiff did not pursue a refinance of her loan in light of the increased costs and higher interest rate. Smith Decl. ¶ 35.

## DISCUSSION

Plaintiff brings three claims in this case and Defendants seek summary judgment as to each. First, Plaintiff brings a claim for violation of RESPA, 12 U.S.C. § 2605(e) based on "Nationstar's conduct in refusing to timely provide the documents [Plaintiff] requested in her written request, within the time allowed by statute." First Am. Compl. ("FAC") ¶ 39. Second, Plaintiff brings a claim against Nationstar for violation of the Oregon Unlawful Trade Practices Act ("UTPA"), ORS 646.608. *Id.* at

¶ 41. Finally, Plaintiff brings a claim for breach of contract against Fannie Mae alleging that Fannie Mae's "conduct in receiving payment through DMI and Nationstar, but failing to credit the payments is a breach of the promissory note and trust deed which [Fannie Mae] has been assigned." *Id*. at ¶ 45. The Court will address each claim in turn.

## I.     Conferral and Local Rule 7-1(a)

As a preliminary matter the Court must address the issue of conferral. The Local Rules for the District of Oregon require, outside of narrow circumstances not present here, that parties confer before filing any motion. LR 7-1(a). The moving party must certify the fact of conferral in the first paragraph of their motion and state that they made a good faith effort through personal or telephone conferences to resolve the dispute and that they have been unable to do so. LR 7-1(a)(1)(A). A general history of past discussion is not sufficient and "[w]hen conferring about a dispositive motion, the parties must discuss each claim, defense, or issue that is the subject of the proposed motion." LR 7-1(a)(2). The Court may summarily deny any motion that fails to meet this certification requirement. LR 7-1(a)(3).

In this case, Defendants have not certified the fact of conferral in their motion and, in their rely brief, appear to admit that they did not specifically confer prior to filing the motion but rely instead on past discussions between the parties. This is not sufficient to meet the requirements of Local Rule 7-1(a) and Defendants' failure to confer supplies an independent basis for the denial of Defendants' motion without further discussion.

The Court notes that Defendants' counsel are not based in Oregon and may have limited experience with litigating motions in this District. Considering this fact, the Court will proceed to an examination of the merits of Defendants' motion. Defendants' counsel are advised to familiarize themselves with the Local Rules of this District and to strictly adhere to the conferral requirements in any future motions practice, as failure to do so runs the risk of summary denial of a non-compliant motion.

## II. RESPA

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, provides an action for damages against mortgage loan servicers who fail to respond to certain types of inquiries from borrowers. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 663 (9th Cir. 2012). RESPA provides that borrowers may inquire about mortgages by making a "qualified written request" ("QWR") defined as "written correspondence, other than notice on payment coupon or other payment medium supplied by the servicer that (i) includes or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

RESPA provides that a servicer has thirty days, excluding legal public holidays and weekends, from the receipt of the QWR in which to

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to

>    the borrow a written notification of such correction (which shall include the name and telephone number of representative of the servicer who can provide assistance to the borrower);
>
>    (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>    >   (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>    >
>    >   (ii) the name and telephone number of an individual employed by, or the officer or department of, the servicer who can provide assistance to the borrower; or
>
>    (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
>    >   (i) the information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>    >
>    >   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

The thirty-day period provided by § 2605(e)(2) "may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding." 12 U.S.C. § 2605(e)(4).

To sustain a claim for failure to respond to a QWR under RESPA, a plaintiff must plead and prove that (1) the defendant is a loan servicer bound by RESPA; (2) the defendant received a proper QWR; (3) the defendant failed to respond adequately; (4) the plaintiff is entitled to actual or statutory damages. *Kelly v. Clear Recon Corp.*, Case No. 3:19-cv-00185-TMB, 2019 WL 6040439, at *6 (D. Alaska Nov. 14, 2019).

Here, the parties do not dispute that Nationstar is a servicer bound by RESPA, nor do they dispute that Plaintiff sent a QWR.

Plaintiff's RESPA claim alleges that Nationstar's "conduct in refusing to timely provide the documents [Plaintiff] requested in her written response, within the time allowed by statute," is a violation of RESPA. FAC ¶ 39. Defendants contend that this claim encompasses only the timeliness of Nationstar's response, without reference to its completeness. This reads Plaintiff's claim too narrowly, however. While the claim emphasizes the timeliness aspect, it also alleges that Nationstar failed to provide all of the necessary documents in response to the QWR. The Court concludes, therefore, that Plaintiff's first claim encompasses both timeliness and adequacy.

With regard to timeliness, Plaintiff's QWR is dated September 7, 2021, but Defendants contend that they did not receive the QWR until November 5, 2021. Hyne Aff. ¶ 18. This is supported by the date stamp on the QWR's mailing envelope, which shows that it was mailed from Portland, Oregon on November 2, 2021. Hyne Aff. Ex. 8. Accepting the November 5, 2021 date, and excluding legal holidays and weekends, Nationstar had until December 20, 2021 to respond to the QWR.

On December 16, 2021, Nationstar notified Plaintiff that it would require an additional time to respond to the QWR and gave an anticipated response deadline of January 6, 2022. Hyne Aff. Ex. 10. As noted, however, the statute permits an additional fifteen days beyond the original thirty and, once again excluding legal holidays and weekends, the new statutory deadline was January 12, 2022.

Nationstar responded to the QWR on January 11, 2022. As this date falls within the time allotted by statute, the Court concludes that Nationstar's response was timely.

The Court therefore turns to the adequacy of Nationstar's response. Plaintiff's QWR sought, *inter alia*, a "statement that contains any information relating to any suspense account entries and/or any corporate advance entries related in any way to this loan." Hyne Aff. Ex. 8. Plaintiff contends that the response failed to show how Plaintiff's payment toward the deferred forbearance balance was maintained and applied. Nationstar's response shows that Plaintiff's $4,472.78 was noted as a "lender paid expense adjustment" and that, following Plaintiff's QWR and an investigation by Nationstar, it was discovered that this was in error and the amount was removed from the balance owning on Plaintiff's loan on January 11, 2022. Hyne Aff. Ex. 11. The Court concludes that this response was adequate to answer Plaintiff's QWR. Nationstar's response was both timely and adequate and so Defendants are entitled to summary judgment on Plaintiff's RESPA claim.

### III. UTPA

Oregon's UTPA establishes a private right of action for persons who have suffered an "ascertainable loss of money or property, real or persona, as a result of another person's willful use or employment of a method, act or practice declared unlawful" by the UTPA. ORS 646.638(1). To maintain a claim under the UTPA, a plaintiff must plead and prove (1) a violation of ORS 646.608(1); (2) causation; (3) damages, and (4) willfulness by the defendant. *Colquitt v. Mfrs and Traders Trust Co.*, 144 F. Supp.3d 1219, 1231 (D. Or. 2015).

The statue enumerates numerous specific unlawful trade practices but also includes a catchall provision which provides that "any other unfair or deceptive conduct in trade or commerce" is an unlawful trade practice. ORS 646.608(1)(u). A plaintiff can sue under the catchall provision only if the Oregon Attorney General has established a specific rule declaring the conduct at issue in the lawsuit to be "unfair or deceptive in trade or commerce." ORS 646.608(4). As relevant to this case, the Oregon Attorney General has promulgated regulations to address unfair and deceptive acts in mortgage loan servicing. Oregon Administrative Rule ("OAR") 137-020-0805. Those regulations provide that a servicer has engaged in "unfair or deceptive acts in trade or commerce" if the servicer "[f]ails to deal with a borrower in good faith." OAR 137-020-0805(6). The regulations define "good faith" as "honesty in fact and the observance of reasonable standards of fair dealing." OAR 137-020-0800(2).

Here, Plaintiff alleges that Nationstar's conduct "in refusing to provide the documents [Plaintiff] requested" and "in deleting the payment of $4,472.78 from [Plaintiff]'s account" are violations of the duty to act in good faith imposed by Oregon OAR 137-020-0805. FAC ¶¶ 41-42.[1] As discussed in the previous section, the Court concludes that Nationstar properly responded to Plaintiff's QWR and so the first allegation of a violation of the UTPA fails.

---

[1] In response to Defendants' Motion, Plaintiff argues that Nationstar violated the UTPA when it violated RESPA pursuant to OAR 137-020-0805(5). This allegation is not included in the FAC, however, and Plaintiff may not amend her claims in a response to a summary judgment motion. Additionally, the Court has concluded that Nationstar did not violate RESPA and so Plaintiff's effort to reframe her claim would not have survived summary judgment, even if it were allowed.

With respect to the second, allegation, that Nationstar deleted the payment of $4,472.78 from Plaintiff's account, the Court concludes that there is a live issue. It is undisputed that Plaintiff made payments to fully clear the forbearance balance from her account. It is likewise undisputed that the forbearance balance remained on Plaintiff's loan after the payments were made and that the erroneous sum remained there until January 11, 2022, despite Plaintiff's repeated efforts to have it removed between May and November 2021. It is not clear, on this record, how the money Plaintiff paid was applied between when she made her payments in December 2020 and January 2021 and when the forbearance amount was finally removed a year later. There is a question of fact as to whether this failure fall below the observance of reasonable standards of fair dealing. In addition, Plaintiff has presented evidence that the presence of the forbearance amount on her loan prevented her from refinancing her loan during a period of extremely low interest rates and that, by the time the sum was removed from her loan, interest rates had risen beyond Plaintiff's current rate, therefore establishing damage to Plaintiff.

The Court concludes that summary judgment is inappropriate as to Plaintiff's UTPA claim and so Defendants' motion is DENIED as to that claim.

### IV.   Breach of Contract

Plaintiff's final claim, for breach of contract, is directed at Fannie Mae, the holder of Plaintiff's note, rather than Nationstar, the servicer of her loan. In order to sustain a claim for breach of contract, a plaintiff must plead and prove the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and

the defendant's breach resulting in damages to plaintiff. *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402-03 (2021). Plaintiff alleges that Fannie Mae's conduct "in receiving payment through DMI and Nationstar, but failing to credit the payment is a breach of the promissory note and trust deed." FAC ¶ 45.

Here, the parties agree that the note and deed of trust require Plaintiff to make periodic payments to Fannie Mae through its servicers and that those payments should be applied in a particular way to the interest, principal, and other charges on Plaintiff's account. It is undisputed that Plaintiff that received a limited forbearance during early months of the COVID-19 pandemic totaling $4,472.78, but that she made additional payments to clear off the sum in December 2020 and January 2021. These payments were received but, for unknown reasons, the forbearance sum remained listed on Plaintiff's loan when it transferred from DMI to Nationstar and were not removed from the loan until January 2022.

Defendants take the position that the facts of this case amount to a minor bookkeeping error. Plaintiff's payments on the forbearance amounts were not misapplied to some other sum owing on the loan. The forbearance amount did not accrue interest and Plaintiff does not allege that penalties or late fees were assessed during the time between when Plaintiff paid the forbearance sum and when it was removed from her account balance in January 2022. Defendants did not attempt to collect the forbearance amount from Plaintiff in that time. The issue was addressed via QWR and rectified in January 2022 with the removal of the forbearance sum from

Plaintiff's account. Defendants stress that Plaintiff was not required to pay the forbearance amount of $4,472.78 twice and so Plaintiff suffered no direct damages.

On this record, the Court concludes that Defendants are entitled to summary judgment on the claim for breach of contract and Defendants' motion is GRANTED.

## CONCLUSION

For the reasons set forth above, Plaintiff's Request for Judicial Notice, ECF No. 16, is GRANTED. Defendants' Motion for Summary Judgment, ECF No. 13, is GRANTED in part and DENIED in part. Summary judgment is granted in favor of Defendants on Plaintiff's claim for violation of RESPA and Plaintiff's claim for breach of contract. Summary judgment is denied as to Plaintiff's claim for violation of the UTPA.

It is so ORDERED and DATED this 18th day of September 2023

        /s/Ann Aiken
        ANN AIKEN
        United States District Judge